IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FIRST FEDERAL FINANCE CORP. D/B/A MONEY EXPRESS; FIRSBANK PUERTO RICO,<br><br>    Petitioner,<br>              v.<br><br>HIRAM CARRION-CONCEPCION,<br><br>    Respondent. | Civil No. 14-1019 (SEC) |
| HIRAM CARRION-CONCEPCION,<br><br>    Petitioner,<br>              v.<br><br>FIRST FEDERAL FINANCE CORP. D/B/A MONEY EXPRESS; FIRSBANK PUERTO RICO,<br><br>    Respondent. | Civil No. 14-1522 (SEC) |

**OPINION AND ORDER**

The Court reiterates that "[t]his labor-arbitration action has 'destroyed the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure.'" First Fed. Fin. Corp. v. Carrión-Concepción, 87 F. Supp. 3d 332, 333 (D.P.R. 2015) (quoting Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2312 (2013)). The parties' procedural and legal strategies have unduly complicated what should have otherwise been a straightforward confirmation of an

arbitral award. Indeed, three actions have been filed in federal court concerning this labor dispute.[1]

Acknowledging, yet ignoring, the highly deferential standard applicable to judicial review of arbitral awards under the Federal Arbitration Act (FAA), the parties have cluttered the docket with oversized briefs, in a futile attempt to get this Court "to hear claims of factual or legal error by an arbitrator as an appellate court does reviewing decisions of lower courts." N. New England Tel. Operations LLC v. Local 2327, Int'l Bhd. of Elec. Workers, 735 F.3d 15, 20 (1st Cir. 2013). With the sole purpose of providing context, a brief summary of the facts, "as the arbitrator found them," follows. Boston Med. Ctr. v. Serv. Employees Int'l Union, Local 285, 260 F.3d 16, 18 (1st Cir. 2001).

## I.   Factual Background

Hiram Carrión started working as a debt collector for First Federal Finance Corp. d/b/a Money Express (FirstBank) on July 2007. The employment contract included a clause requiring arbitration on "any claim for alleged discrimination, breach of contract, damages or retaliation related with the termination" of Carrión's employment. Carrión-Concepción v. First Fed. Fin. Corp., Civil No. 10-1617, 2011 WL 5059192 at 2 (D.P.R. Aug. 3, 2011).

In late May 2009, Carrión complained that he was being sexually harassed by his supervisor, Elia Díaz. A week later, the branch manager, Marilda Poventud, ordered him to take a two-week vacation, pending an internal investigation. The officer in charge of the investigation, Javier López, concluded that while Díaz's conduct was unnecessary and reprehensible, it did not amount to sexual harassment.

Immediately after he returned from the forced vacation, López informed Carrión that, due to reasons unrelated to his sexual harassment complaint, he was

---

[1] In addition to the captioned cases, see Carrión-Concepción v. First Fed. Fin. Corp., Civil No. 10-1617, 2011 WL 5059192 (D.P.R. 2011).

reassigned to another branch. He was given five days to accept the reassignment or else he would be fired. Unwillingly, he accepted.

At the new branch, Carrión's relationship with his supervisors Carmen Vega and Edgardo Alicea started off on the wrong foot. He resigned five months later following a series of incidents with his supervisors and other health issues, some of which, the Arbitrator found, were related to a hostile work environment. See generally, Docket # 1-9.

Pending before the Court are FirstBank's petition to vacate the award under FAA § 10, and Carrión's petition to modify the award pursuant FAA § 11, to include the doubling of damages under Puerto Rico law.[2] Both parties moved to dismiss the other's petition. Because FirstBank was unable shoulder its heavy burden to demonstrate that the arbitrator exceed her powers or otherwise acted in manifest disregard of the law and because Carrión filed its petition to modify the award after the three-month limitations period provided in FAA § 12, both petitions are **DENIED.** Moreover, because a motion to dismiss "a complaint to vacate or modify an award is functionally equivalent to a motion to confirm an award," the award is **CONFIRMED** in its entirety. Universal Ins. Co., Inc. v. Warrantech Consumer Prod. Servs., Inc., 849 F. Supp. 2d 227, 240 n. 9 (D.P.R. 2012) (citing General Elec. Co. v. Anson Stamping Co. Inc., 426 F.Supp.2d 579, 591-92 (W.D.Ky. 2006)); accord Sanluis Developments, L.L.C. v. CCP Sanluis, L.L.C., 556 F. Supp. 2d 329, 332 (S.D.N.Y. 2008) ("When a party moves to dismiss a motion to vacate an arbitration award, the court may, sua sponte, treat the motion to dismiss as a motion to confirm the award." (Collecting cases on this point)).

---

[2] FirstBank filed this action first in Civil No. 14-1522. Instead of requesting leave to file a motion to modify the award, Carrión filed a separate action (the third action concerning this labor dispute) in Civil No. 14-1522, which was originally assigned to Judge García-Gregory. Over Carrión's opposition, both cases were consolidated. See Docket # 68.

## II. Standard of Review

The FAA "embodies a national policy favoring arbitration." Bangor Gas Co., LLC v. H.Q. Energy Servs. (U.S.) Inc., 695 F.3d 181, 187 (1st Cir. 2012) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, (2006). Accordingly, judicial review of arbitral awards "is extremely narrow and exceedingly deferential." Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 63 (1st Cir. 2015). Indeed, it is "among the narrowest known in the law." Id. (quoting Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps., 873 F.2d 425, 428 (1st Cir. 1989)).

This exacting standard makes arbitral awards "nearly impervious to judicial oversight." UMass Mem'l Med. Ctr., Inc. v. United Food And Commercial Workers Union, 527 F.3d 1, 4 (1st Cir. 2008). This is so because courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does reviewing decisions of lower court." N. New England Tel. Operations, 735 F.3d at 20.

For a court to vacate an arbitral award, "[i]t is not enough for [a party] to show that the panel committed an error[,] or even a serious error." Raymond James, 780 F.3d at 63 (quoting Stolt–Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662, 671(2010)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). An arbitration ruling may be deemed unenforceable "only if it imposes the arbitrator's 'own view of sound policy' instead of adhering to the agreement that governs the parties' relationship." Raymond James, 780 F.3d at 64. (quoting Stolt–Nielsen, 559 U.S. at 672).

That is not to say that the limited scope of review amounts to "granting limitless power to the arbitrator." Doral Fin. Corp. v. García–Veléz, 725 F.3d 27, 31 (1st Cir. 2013). The FAA enumerates several grounds upon which an award may be vacated or modified. Under § 10, a court may vacate an award

(1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Section 11, allows a federal court to modify or correct an award

> (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) where the award is imperfect in matter of form not affecting the merits of the controversy.

Id., § 11.

Some courts, including the First Circuit, have held that arbitral awards may also be vacated "if they are in 'manifest disregard of the law,' a ground not explicitly included in section 10." Raymond James, 780 F.3d at 64. This standard is applied primarily in cases "where the award contradicted unambiguous contract language or 'the arbitrator recognized the applicable law, but ignored it." Id. (internal citations omitted). Whether the manifest disregard doctrine remains an independent ground for vacatur after the Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 590, (2008),[3] however, is uncertain. Raymond James, 780 F.3d at 64. In that case, the Supreme Court held in no uncertain terms that the regimes of judicial review provided in §§ 10 and 11 of the FAA were exclusive, and may not be

---

[3] The Supreme Court suggested that the manifest disregard doctrine that developed following the language used in Wilko v. Swan, 346 U.S. 427, 436-37 (1953) ("the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation"), possibly referred to § 10 grounds collectively, or as "a shorthand for…the paragraphs authorizing vacatur when the arbitrators 'were guilty of misconduct' or 'exceed their powers.'" Hall Street, 552 U.S. at 585.

expanded by contract. Hall Street, 552 U.S. at 586; see also Warrantech, 849 F. Supp. 2d 227, 237 n. 7. Still, the First Circuit has yet to determine whether its "manifest disregard case law can be reconciled with Hall Street." Raymond James, 780 F.3d at 64-65 (parenthetically quoting Stolt–Nielsen, 559 U.S. at 672 n. 3, where the Supreme Court refrained "from deciding whether 'manifest disregard' survived Hall Street 'as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10'"); see also Bangor Gas Co., 695 F.3d at 187 n. 3 (noting a circuit split on this issue and listing cases).

The Court need not decide whether the manifest disregard doctrine remains good law because "even assuming the doctrine remains available, it would not invalidate the award in this case." Raymond James, 780 F.3d at 65.

### III. Analysis

FirstBank first challenges the Arbitrator's conclusion that Carrión was victim of sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

Title VII provides two theories under which an employee may prove a claim for sexual harassment. Under the *quid pro quo* theory, a claimant may recover "where an employee or supervisor uses his or her superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). Where, as here, the employee proceeds under a hostile work environment theory, he must prove that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Id.; see also Pérez v. Horizon Lines, Inc., 804 F.3d 1, 6 (1st Cir. 2015).

Firstbank does not dispute that Díaz constantly made-sexually charged comments "to all employees, men and women," during office hours. Docket # 44, p. 33. In addition, the Arbitrator determined that Díaz "sent text messages and showed a

photo of herself in bathing suit," to Mr. Carrión. Docket # 1-9, ¶12. At at least once, she invited him to her house. Apparently, in an effort to convince him, she told Carrión "not to be a faggot." Id., ¶ 23. The award also indicates that Carrión tried to avoid Díaz continual harassment. After this proved unsuccessful, he reported the harassment to his Manager, Ms. Poventud, pursuant to company protocol. Id. ¶ 27. Ultimately, the Arbitrator concluded that Carrión proved by a preponderance of the evidence that Elia Díaz singled out Mr. Carrión and sexually harassed him in numerous occasions. Id.

FirstBank argues that the Arbitrator acted in manifest disregard of the law because her "findings of fact do not show a conduct so severe or pervasive" to support a claim for sexual harassment under a hostile work environment theory. Docket # 78, p. 7. This is the same as saying that the Arbitrator erred in applying the law to her factual findings, which is not a valid ground to vacate an arbitral award. But even under a manifest disregard theory, "it would stretch basic interpretive principles to expand the [FAA] stated grounds to the point of evidentiary and legal review generally." Hall Street, 552 U.S. at 586. To follow FirstBank's lead would turn this arbitration into a mere "prelude to a more cumbersome and time-consuming judicial review process." Id. at 588.

Next, FirstBank challenges the Arbitrator's finding that it could be held liable for Díaz's sexual harassment pursuant to Vance v. Ball State Univ., where the Supreme Court held that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim." 133 S. Ct. 2434, 2443, (2013). The Court need not address this issue, however,[4] because the Arbitrator determined that even if Díaz was not considered a supervisor for strict liability purposes under Title VII, FirstBank was nevertheless "negligent in failing to prevent harassment from taking

---

[4] Indeed, it seems that the Arbitrator did not hold FirstBank liable under strict liability theory. Although the Arbitrator did find that Díaz was Carrión's supervisor, she determined that Díaz did not effect a tangible change in the terms and conditions of Carrión's employment and proceeded to inquire whether FirstBank could be liable under a negligence theory. Docket # 1-9, p. 8.

place." Docket # 1-9, p. 9. FirstBank also takes issue with this conclusion arguing that the award contains no factual finding showing that it "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed." Vance 133 S. Ct. at 2453. The Court disagrees.

Among other things, the Arbitrator noted that FirstBank's Human Resources Director acknowledged that the company did not follow its protocol when dealing with Carrión's complaint. Docket # 1-9, ¶ 32. For instance, while conducting the investigation, López failed to interview all the relevant witnesses, inform the branch manager or district manager about his findings, and properly document his investigation; all of this, contrary to the applicable company protocol. Id. Given the deferential standard owed to arbitral awards, this should suffice to reject FirstBank's challenge on this front. But there is more.

FirstBank relies much on the fact that the harassment stopped right after Carrión complained, as evidence that it promptly and effectively corrected the harassing behavior. But as previously noted, shortly after he complained, Carrión was forced to take a two week vacation and was then reassigned to another branch immediately upon his return. Id., ¶ 14. Rather than correcting the harassment, the Arbitrator plausibly found that FirstBank simply removed the putative victim from the putative harasser.

Moreover, a similar situation had happened before with like results. Around 2006-2007, Griselda Meléndez had complained of Díaz's graphic sexual comments regarding, among others, an affair she had with a former district manager. As it happened with Carrión, the Arbitrator determined, FirstBank retaliated by transferring Meléndez to a different branch for about a month. Id., ¶¶ 23 & 27. These incidents exemplify her finding that FirstBank employees "were afraid to complain or to give information to Human Resources because the complainant or informant was known to suffer retaliation." Id., ¶ 31.

The above mentioned facts are sufficient to confirm the Arbitrator's conclusion that FirstBank was negligent in failing to prevent harassment in the workplace and that Carrión's transfer was in retaliation for his complaint. Id., ¶ 32. On this last point, other than questioning the weight of evidence in support of this finding—which is not a ground to vacate—FirstBank contends that the Arbitrator disregarded the applicable law by failing to apply the "but-for" standard of causation applicable to retaliation under Title VII. But even if the Court presumes that the Arbitrator incurred in legal error or even serious error in this regard, FirstBank makes no effort to show how this amounts to manifest disregard of the law.

Lastly, FirstBank posits that the Arbitrator exceeded her powers and manifestly disregarded the law by concluding that Carrión was constructively discharged pursuant to Puerto Rico's wrongful-discharge statute. In addition to the retaliatory acts previously mentioned, the Arbitrator determined that upon Carrión's transfer, his new supervisors intentionally tried to get rid of him by making his life miserable. For instance, they referred to Carrión as "the problematic" one, unduly criticized him, and even initiated a formal investigation regarding his absences despite "knowing full well" that he was under medical leave. The Arbitrator also found that Vega and Alicea prevented Carrión from meeting his benchmarks by not allowing him to collect his accounts. When Carrión documented his complaints, instead of addressing them, his supervisors ignored them. Id., ¶¶ 29- 31.

According to FirstBank, the Arbitrator's findings are unsupported by the record. Even if they were, it maintains, those actions do not reflect a conduct so "severe or pervasive enough as to result in a constructive discharge" under Title VII or Puerto Rico law. Docket # 78, p. 23. Once again, FirstBank invites this Court to engage in general evidentiary and legal matters unfit for judicial review. As it happens with all of its challenges, FirstBank proffered no legal authority, nor context within the facts of the case, from which the Court could determine that the Arbitrator exceeded her

powers or acted in manifest disregard of the law. FirstBank's petition to vacate the award is thus denied.

Moving on, the Court tackles Carrión's petition to modify the award to include the doubling of damages under Puerto Rico law. Civ. No. 14-1522, Docket # 1. He filed this petition on June 30, 2014—over six months after the Arbitrator rendered the award on the issues of liability and damages. Carrión does not dispute that the three months statute of limitations under FAA § 12 applies to his petition. In response to FirstBank's motion to dismiss, he posits that that the December 11, 2013 award was interlocutory; not a final decision subject to judicial review. See El Mundo Broad. Corp. v. United Steelworkers of Am., 116 F.3d 7, 9 (1st Cir. 1997) ("It is essential for the district court's jurisdiction that the arbitrator's decision was final, not interlocutory").

First, he points out that the issue of attorneys' fees and cost was still pending resolution. This argument fails because the "Award plainly disposed of all the substantive claims raised by the respondent in his demand for arbitration." Docket # 43, p. 1. That suffices to confer this Court with jurisdiction. See Providence Journal Co., 271 F.3d at 20 ("deem[ing] the arbitrator's partial award on liability 'final,' and conclud[ing] that the district court properly exercised its jurisdiction over the case") ); see also Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 235 (1st Cir. 2001).

Carrión then suggests that his petition is timely because he had filed a motion to modify the Award before the Arbitrator which was not resolved until May 29, 2014. Docket # 12, p. 9. This argument fares no better since the First Circuit has rejected the contention that "an application to modify or clarify an arbitral award tolls the FAA § 12 limitations period." Fradella v. Petricca, 183 F.3d 17, 20 (1st Cir. 1999); accord Olson v. Wexford Clearing Servs. Corp., 397 F.3d 488, 490 (7th Cir. 2005) (Wood, J.). Accordingly, Carrión's petition under FAA § 11 is dismissed as time-barred.

### IV. Conclusion

For the reasons stated, FirstBank and Carrión's petitions under FAA §§ 10 & 11, respectively, are **DENIED**. The award is thus **CONFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge